# COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 5, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.** **2018AP1894** | Cir. Ct. No. 2017CX5 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS**<br>**DISTRICT III** |

SHAWANO COUNTY,

    PLAINTIFF-RESPONDENT,

  V.

TERESA K. ANDERSON,

    DEFENDANT-APPELLANT,

SHIRLEY ZERBE,

    DEFENDANT.

        APPEAL from an order of the circuit court for Shawano County: JAMES R. HABECK, Judge. *Affirmed*.

¶1    HRUZ, J.[1]    Teresa Anderson, pro se, appeals an order compelling her compliance with Shawano County's Health, Junk and Environmental Hazard Ordinance No. 7-09.   The order permits Shawano County to enter onto Anderson's property and, if necessary, remove items at Anderson's expense so as to bring the property into compliance with the ordinance.   Anderson argues the circuit court erred by entering the order.   We affirm.

## BACKGROUND

¶2    In July 2017, Anderson took ownership of real property in the Village of Eland, Shawano County, from her mother Shirley Zerbe.   Prior to that time, Anderson had been living at the property for approximately sixteen years while Zerbe resided in Florida.   Since 2004, the Eland Village Board had been aware of various vehicles and junk dispersed throughout the property, and it had worked with the family to keep the property in compliance with local ordinances.

¶3    In October 2015, the village board moved to require the family to clean up the property, and in August 2016, the village board referred the matter to the County.   The County cited Zerbe in April 2017 for violating Shawano County's Health, Junk and Environmental Hazard Ordinance No. 7-09, although, as previously noted, Zerbe lived in Florida and Anderson resided at the property at the time.   A default judgment on the citation was entered on September 21, 2017.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Anderson was subsequently added as a defendant because she had taken ownership of the property.[2]

¶4     After waiting over thirty days following entry of the default judgment, the County filed a complaint on October 27, 2017, seeking an order to compel Anderson's compliance with ordinance No. 7-09.  The circuit court held an evidentiary hearing on September 24, 2018.  Andy Popp, the county zoning administrator, testified for the County.

¶5     One of Popp's duties is to enforce ordinance No. 7-09.  As such, Popp explained that he had visited the property prior to the County citing Zerbe in order to discuss with "the owners" the items on the property that were violating the ordinance.  Those items included scrap metal, tires, and a variety of licensed and unlicensed vehicles.  After Anderson failed to bring the property into compliance with the ordinance requirements, the County issued the citation in April 2017.

¶6     Popp admitted that Anderson had "made some efforts to clean up the property."  Still, because she had not brought the property entirely into compliance with the ordinance, Popp advised the County to seek a court order giving it the ability to clean up whatever items Anderson failed to address.

---

[2] There appears to be a discrepancy as to when Anderson took ownership of the property. Anderson explains that the default judgment was entered because she was "not allowed to represent" Zerbe at the September 21, 2017 hearing on the County's April 2017 citation, but that Anderson is now listed as a defendant because the property "was then transferred to [her] name." She also testified, however, that she thought she took ownership of the property in July 2017. The exact date on which Anderson took ownership of the property is inconsequential to our decision.

¶7       As relevant to this appeal, the most recent date Popp visited the property was on August 16, 2018—less than one month before the evidentiary hearing. While at the property, Popp took a handful of pictures, which the circuit court received as an exhibit at the hearing. The pictures depicted that junk and licensed and unlicensed vehicles remained on the property. Specifically, there were twenty-five cars, trucks, and vans, and one motor home. Popp explained: "Four of those had collector plates including the motor home. Sixteen vehicles were unlicensed. Four were licensed. Two had past due stickers, so they were technically unlicensed. But … it sounded like they were going to pursue getting them licensed." Popp also testified that when he was last on the property on August 16, the items on the property were not screened from public view because the property's trees would not obscure the view into the property in late fall, winter, and early spring when those trees' leaves would be absent.

¶8       Anderson testified next. She described the clean-up efforts she and her husband had undertaken since the citation was issued, which included the removal of approximately thirty vehicles from the property. Anderson explained that she and her husband are licensed Wisconsin automobile collectors and that, after undergoing a "serious effort" to comply with all applicable laws, she believed the property now complied not with the ordinance, but rather with WIS. STAT. § 341.266. Furthermore, she asserted that provisions within § 341.266 granted her the right to store vehicles and park cars on the property and, consequently, ordinance No. 7-09 conflicted with § 341.266. Because Anderson believed the property complied with § 341.266 and that statute preempted ordinance No. 7-09, she argued that the County's request for an enforcement order was improper.

¶9      On cross-examination, Anderson further explained how the property was cleaner at the time of the hearing than when Popp visited the property on August 16.   Anderson submitted pictures of the property that were taken on September 20, four days prior to the hearing.  She explained that she had removed more vehicles and junk, and she had erected a screen fence on two sides of the property.  Anderson testified that on the date of the hearing, twenty cars remained on the property, which she again contended was permissible under WIS. STAT. § 341.266.   Out of the twenty remaining vehicles, five had collector plates. Although the pictures showed that the property had been further cleaned since Popp's visit on August 16, Anderson admitted that "[t]here's clearly some more that we intend to be working on cleaning."

¶10      The circuit court concluded the County had proved by clear and convincing evidence that it needed an order to compel Anderson's compliance with ordinance No. 7-09.  The court determined that WIS. STAT. § 341.266 had no bearing on the case because "quite a number of statutes allow municipalities to have more strict regulations."  It further determined that, in this instance, there was not a statute that interfered with the County's authority to require that the property be compliant with the ordinance.  Notably, the court also found, as a factual matter, that Anderson's property had insufficient screening:  "When the leaves are on, I would agree that's a pretty effective fencing situation there.   However, I recognize a month from now that's going to look substantially different than now. So I recognize that as well."  Thus, although the court observed that "both parties are in agreement with my observation that there has been progress on clean up over time here … I'm giving the County the authority it wants."

¶11      Accordingly, the circuit court entered an order giving Anderson thirty days to make the property fully compliant with the ordinance.  The order

5

also granted the County authority to enter the property after the thirty days had elapsed and perform, at Anderson's expense, all reasonable actions necessary to bring it into compliance with the ordinance if the property failed the County's inspection. Anderson now appeals.

## DISCUSSION

¶12    The issue on appeal is whether the circuit court erred by granting the County an order to enforce ordinance No. 7-09 based upon the County's April 2017 citation. This issue requires us to construe the ordinance and apply it to a particular set of facts, which are questions of law that we review de novo. *Village of Egg Harbor v. Sarkis*, 166 Wis. 2d 5, 10, 479 N.W.2d 536 (Ct. App. 1991). However, we will not set aside the circuit court's factual findings unless they are clearly erroneous. WIS. STAT. § 805.17(2).

¶13    Section 3.01B of ordinance No. 7-09 prohibits Shawano County residents from storing "any junk outside a building and within public view for a period of any part of 5 or more days during any 30-day time period." The ordinance defines "junk" as "any of the following that pose a threat to public health, safety, or property rights." SHAWANO COUNTY, WIS. ORDINANCE No. 7-09 § 2.01C (Dec. 16, 2009). The definition then provides commonsense examples of items prohibited as "junk," such as scrap metal, glass, debris, garbage, and tires. *Id.* The definition also includes the following: "Any junked, ruined, dismantled, wrecked, unlicensed, unregistered, or inoperative motor vehicle, including but not limited to buses, vans, trucks, cars and recreation vehicles." *Id.* Section 3.01D declares that violating § 3.01B constitutes a public nuisance and subjects the violator to penalties that are enumerated in § 5.01.

¶14     There are exceptions to the ordinance's prohibited acts.  *Id.*, § 3.02. As relevant here, the ordinance "is not intended to prohibit the storage of inoperative or abandoned equipment that is screened from public view or adjacent property owners by a visual barrier." *Id.*, § 3.02C.  Additionally, the ordinance "is not intended to prohibit the proper outside storage of licensed and operable motor vehicles; and two stock cars, and two unlicensed vehicles." *Id.*, § 3.02D.

¶15     Like the circuit court, we conclude that the order compelling Anderson's compliance with ordinance No. 7-09—based upon the County's April 2017 citation and subsequent September 2017 default judgment—was proper. Assuming the County was required to prove the violation subsequent to the entry of the default judgment, the County submitted pictures of the property from August 2018—approximately one year after Zerbe defaulted on the County's citation and the County filed its complaint—depicting the property littered with scrap metal, tires, and dilapidated appliances and machinery.  These items meet the ordinance's definition of "junk."  Those same pictures also showed a variety of licensed and unlicensed vehicles on the property.  More than two unlicensed or unregistered vehicles are also defined as "junk" within the meaning of the ordinance.

¶16     Additionally, the circuit court found that the foregoing items meeting the definition of "junk" were not screened from public view.  Thus, as of at least August 2018, the property was in violation of the ordinance because anything that was "junk" and not a vehicle was not screened from public view and because the property held more than two unlicensed vehicles.  Given that the property still failed to comply with the ordinance approximately one year after the default judgment and the filing of the complaint, we conclude that the order

granting the County permission to enter the property and remove whatever items are necessary to bring the property into compliance was not in error.

¶17    Anderson's arguments on appeal are flawed in two different ways. First, she relies upon facts not found by the circuit court.  It is clear that Anderson believes that the property's condition at the time of the September 24, 2018 evidentiary hearing should be the only relevant point in time for assessing the property's compliance with the ordinance.  However, any remedial actions taken by Anderson allegedly to bring the property into compliance—such as the apparent cleanup and screening efforts she undertook between the time Popp visited the property on August 18, 2018, and when the pictures that were taken of the property on September 20—are inconsequential because the order from which Anderson appeals is an enforcement order based upon prior violations.  *Cf. City of Superior v. Cunningham*, No. 2013AP2626, unpublished slip op. ¶¶4, 13-15 (WI App May 6, 2014) (concluding on summary judgment that the defendant violated city ordinances after the court assessed evidence of the defendant's property at various times before and after the city issued the defendant citations for violating those city ordinances).

¶18    The property had already been found to be in violation of the ordinance well before the evidentiary hearing.  Indeed, the property was effectively found in violation of the ordinance when the default judgment was entered in September 2017 based upon the County's April 2017 citation.  The County then issued its complaint seeking a circuit court order compelling Anderson's compliance with the ordinance in October 2017.  The purpose of the hearing and the order at issue was to give the County a means to legally enter the property and remove junk after years of informal requests and discussion with Anderson had already failed to ensure compliance with the ordinance.  The

purpose was not solely, if at all, to decide whether the property was *still* in violation of the ordinance, although that answer could have been relevant to the court's determination of whether the relief the County requested was necessary.

¶19   To that end, the County elected to prove that the order was necessary by submitting pictures of the property taken over one year after Zerbe had been cited.  It is possible that the circuit court could have concluded the order was unnecessary due to Anderson's remedial actions taken after the citation was issued and default judgment was entered (as evidenced by her photographs).  However, we conclude Anderson's failure to bring the property into compliance after approximately one year—beginning from either the April 2017 citation or the September 2017 default judgment until the date when Popp observed and photographed the property in August 2018—was enough evidence for the court to determine that the order was necessary.

¶20   Second, and relatedly, Anderson's arguments that WIS. STAT. § 341.266 preempts ordinance No. 7-09 are not ripe for adjudication.  The ordinance allows for only two unlicensed motor vehicles to be kept on the property, and the order provides that the County "shall be able to remove any additional remaining unlicensed vehicles."  Anderson argues that § 341.266 permits her to keep as many unlicensed vehicles on the property as she wants, as long as they do not constitute a health hazard and they are screened from ordinary public view.  Thus, in Anderson's view, the ordinance and § 341.266 conflict.

¶21   We need not address at this time whether WIS. STAT. § 341.266 preempts ordinance No. 7-09 under any particular set of facts.  As noted above, the circuit court order was based upon the undisputed fact that junk and unlicensed vehicles on the property had not been properly screened from public view for a

9

substantial period of time after entry of the default judgment on the citation. Both the ordinance and § 341.266 require such screening.[3] *See* WIS. STAT. § 341.266(4); SHAWANO COUNTY, WIS. ORDINANCE No. 7-09 § 3.02C (Dec. 16, 2009). Accordingly, the order was based on facts showing Anderson was clearly in violation of both the ordinance and the statute. For the foregoing reason, we decline to address the merits of Anderson's preemption argument on this appeal.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[3] Anderson called Joseph Zatloukal to testify at the evidentiary hearing, but the substance of his testimony is immaterial to our analysis. Most of his testimony pertained to Anderson's preemption argument, which we decline to address. Additionally, we recognize Zatloukal testified that Anderson's "property was screened from public view [within] the intent of" WIS. STAT. § 341.266 when he visited the property on September 20, 2018—four days prior to the hearing. Zatloukal's opinion, however, is of no moment for two reasons. First, questions of fact are left to the circuit court's discretion—which we cannot set aside unless it is clearly erroneous. *See* WIS. STAT. § 805.17(2). Second, as we have already explained, the court was not required to take into account subsequent remedial actions by Anderson allegedly to bring the property into compliance.